597 A.2d 1245

**Clifford R. HILL and Joan M. Hill, Appellants,**

v.

**The ZONING HEARING BOARD OF MAXATAWNY TOWNSHIP, Appellee.**

Commonwealth Court of Pennsylvania.

Argued April 2, 1991.

Decided Sept. 27, 1991.

540

542

Rodney M. Fisher, for appellants.

Kurt H. Decker, for appellee.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Clifford R. Hill and Joan M. Hill (collectively, Hills) appeal from the order of the Court of Common Pleas of Berks County, dated June 25, 1990, which dismissed their appeal from the determination of the Zoning Hearing Board of Maxatawny Township (Board).

The Hills own a tract of land, comprised of eight acres, in a C–1 Commercial District as established by the Zoning Ordinance which was adopted by Maxatawny Township (Township) on July 9, 1984.[1] Since 1967, the Hills operated

1. Maxatawny Township, Berks County, Pennsylvania, Zoning Ordinance, §§ 101–1007. A copy of the subject ordinance was submitted as part of the record.

a sanitation collection service, which is a non-conforming use in that district.[2]

In November, 1985, the Hills applied for and received a building permit from the Township for construction of a "storage building." The building was used for storage of equipment, such as trucks, tractors, portable toilets and trash containers, which had previously been stored in open space on the property.

In December, 1986, the Hills submitted an application to the Department of Environmental Resources (DER) for a permit to operate a trash transfer station to be located in the "storage building." Notice of the application was given to the Township as well. On June 11, 1987, the Hills filed a "zoning appeal" with the Board in which they requested a variance from Section 404 of the Zoning Ordinance (C–1 Commercial Permitted Uses) or a special exception under Section 404.3 of the ordinance (uses permitted by Special Exception) or a determination that operation of the trash transfer station was a limited expansion of the pre-existing non-conforming use, and/or a determination that the ordinance unconstitutionally excludes such use of the property.[3] On June 24, 1987, DER issued a permit to the Hills for operation of the trash transfer station,[4] and its operation commenced.

2. Testimony before the Board established that there are two houses, three garages, some sheds and a large building which is used as the transfer station on the property. One of the garages is a licensed Pennsylvania inspection station and is used for truck repair and for storage of trucks, equipment and trash containers. In addition, there are 180 portable toilets and 350 trash dumpsters stored on the property when not out on rental. The Hills also clean and repair the trash dumpsters on this site. Several garbage trucks which are used in the trash collection business are also stored on the premises.

3. The record does not disclose what, if any, action was taken prior to the Hills filing an appeal to the Board. However, testimony before the Board related that the Hills had received a letter from the township solicitor telling them that they should go to the Board or else they would be taken to court. (N.T., 9/1/87, p. 70, R.R. p. 70a.) The record does not contain the letter or any other notice.

4. The trash transfer station operates as a transfer point where collected residential and commercial trash is dumped from the garbage

The Board conducted hearings on the Hills' "zoning appeal" and on November 18, 1987, the Board issued a decision in which it found that the trash transfer station is a permissible reasonable expansion of the pre-existing non-conforming use as a sanitation collection service. The Board imposed 15 conditions to the continued operation of the trash transfer station. The Board further stated, in relation to the application for a special exception, that because it considers the application as a reasonable expansion of a pre-existing non-conforming use, a special exception is not appropriate. The Board also determined that a variance is not relevant for the same reason. With regard to the Hills' allegation that the zoning ordinance excludes the trash transfer station, the Board found that such a use is permitted in the "I–Industrial District," or it may be permitted in this district as a junk yard.

The Hills appealed to the Court of Common Pleas of Berks County. The Hills alleged that the Board erred in concluding that the trash transfer station is an expansion rather than a continuation of their pre-existing non-conforming use, and then listed 29 additional reasons for their appeal. The trial court took no additional evidence and after argument addressed the reasonableness of the 15 conditions attached to the approval of the trash transfer station. On June 25, 1990, the trial court entered an order dismissing the Hills' appeal.

Where the trial court has received no additional evidence, the scope of review of this Court as well as the trial court is limited to determining whether the zoning hearing board committed an abuse of discretion or error of law. *Board of Supervisors of Upper Southampton Township v. Zoning Hearing Board of Upper Southampton Township*, 124 Pa.Commonwealth Ct. 103, 555 A.2d 256 (1989).

The Hills raise the following issues for our review: (1) whether the Board erred by imposing conditions on the alleged continuation of the non-conforming use; (2) whether

trucks, reloaded onto larger carrier trucks and transported therefrom to landfills.

the Board abused its discretion by imposing conditions on a legal use when the conditions were unsupported by substantial evidence; (3) whether the authority of the board to impose the conditions in question was pre-empted; and (4) whether the Zoning Ordinance of Maxatawny Township excludes trash transfer stations as a legal use.

■ Before we address the issues raised by the Hills, we must first determine the authority of the Board to impose conditions. Section 601 of the Pennsylvania Municipalities Planning Code (MPC),[5] 53 P.S. § 10601, provides that the power to enact, amend and repeal zoning ordinances lies with the governing body of the municipality. *See, Clover Hill Farms, Inc. v. Lehigh Township Board of Supervisors,* 5 Pa.Commonwealth Ct. 239, 289 A.2d 778 (1972). Section 901, 53 P.S. § 10901, provides that a municipality which has enacted a zoning ordinance shall create a zoning hearing board. "Zoning boards, however, have been clearly held not to be judicial, but administrative bodies, creatures of the legislative body." *Golla v. Hopewell Township Board of Supervisors,* 69 Pa.Commonwealth Ct. 377, 379, 452 A.2d 273, 274 (1982). Accordingly, it is the governing body of the municipality which has the power to enact laws to regulate land use pursuant to the police power.[6]

■ Neither the MPC nor the Zoning Ordinance herein addresses the attaching of conditions where there is a grant of expansion of a non-conforming use. In *Everson v. Zoning Board of Adjustment of the City of Allentown,* 395 Pa. 168, 149 A.2d 63 (1959), our Supreme Court held that the power of a zoning board to impose reasonable conditions, restrictions or safeguards as a prerequisite to granting an extension of a non-conforming use is inherent

---

5. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11201.

6. The MPC, at Sections 910.2 and 912.1, 53 P.S. §§ 10910.2, 10912.1, also provides that the zoning hearing board may attach conditions to the grant of a variance and/or a special exception. Although the Board in the present matter considered the Hills' application for a variance and/or a special exception, it found that the grant of either was not necessary; therefore the conditions attached by the Board were not pursuant to those sections of the MPC.

in the board. The applicable zoning ordinance in *Everson* provided that a non-conforming use may be enlarged or extended provided that such enlargement or extension shall not in any case be detrimental to or tend to alter the character of the neighborhood. In *Silver v. Zoning Board of Adjustment*, 435 Pa. 99, 255 A.2d 506 (1969), the Supreme Court held that a *municipality* can impose conditions on the expansion of a non-conforming use as necessary for the preservation of the health, welfare and safety of the community. In view of the foregoing, it necessarily follows that a zoning hearing board may only impose conditions on the expansion or extension of a non-conforming use if the conditions reflect the subject matter and content of an ordinance duly enacted by the governing body of the municipality. Additionally, there must be sufficient evidence in the record before the Board to support the imposition of the conditions.

Here, the Hills have challenged the imposition of all of the conditions attached by the Board on the basis of insufficient evidence to support them and pre-emption of the Board's authority by DER. Before we review the conditions, we will first address the Hills' argument that the Board lacked authority to impose conditions because the trash transfer station is not an expansion of the non-conforming use but is merely a continuation of the non-conforming use as a sanitation collection service.

The Hills argue that the Board made no finding that the trash transfer station is an expansion of the pre-existing non-conforming use, but only intimated that it is a mere change in the nature of the non-conformity, i.e., a continuation of the prior use. As such, the Hills argue, the Board has no authority to impose conditions on what is found to be a continuation of the prior non-conforming use.

The Board made 51 findings of fact in its opinion; it is true that none of the findings state that the trash transfer station is an expansion of the pre-existing non-conforming use as a sanitary service. The determination that a use is an expansion of a prior non-conforming use is

a conclusion of law and there is no requirement that it be set forth as a finding of fact. The Board does properly state, at conclusion of law 3, that:

3. The Applicants' use of a trash transfer station in conjunction with their sanitation service of collecting residential and commercial trash is a permitted expansion of a pre-existing non-conforming use provided the following conditions are met and complied with: ...

The Board set forth its findings which were sufficient to support its conclusion that the trash transfer station is an expansion of the prior non-conforming use, in accordance with Section 908(9) of the MPC, 53 P.S. § 10908(9).

Proper analysis of this question—expansion versus continuation of a non-conforming use—requires us to first review what use was made of the land prior to and subsequent to the operation of the trash transfer station. Mr. Hill testified that he purchased the property in June, 1967 and began his trash collection business. His business operation consisted of collecting commercial and residential trash in his own trucks and transporting it directly to landfills.[7] Due to the permanent closing of certain landfills, the garbage haulers were required to travel farther to dump their collected trash; this situation prevented them from returning to their collection routes once their trucks were full because the travel time had increased significantly. In order to alleviate this problem, the Hills decided to open a trash transfer station which would enable the garbage haulers to dump the garbage at the station after filling their trucks and then return to the collection routes. At the transfer station, the garbage is reloaded onto larger transport trucks and then taken to the landfill. All of this takes place in the "storage building." The trash transfer station also accepts garbage from other haulers serving various nearby municipalities. (N.T., 9/1/87, pp. 34–53, R.R. pp. 34a–53a.)

7. Occasionally, due to time constraints, the trucks were returned to his premises with a full load of garbage which was transported to the landfill the following day.

It is apparent that the current use of this property is different from the prior use, although it is related to the prior use. The Hills have added a new aspect to their prior trash collection business, i.e., a trash transfer station where trash collected from the Hills' own customers and from others is dumped and then transferred to larger carriers. This is not a mere continuance of the prior use which involved trash collection and occasional overnight storage without dumping and reloading onto larger transporters.

The Board stated:

The Applicants' pre-existing nonconforming use of a sanitation collection service has not been significantly altered by the trash transfer station. The trash transfer station is integrally related to the Applicants' prior use of a sanitation collection service. The trash transfer station only represents a procedural change in how the Applicants collect, transfer, and dispose of wastes. The adoption of a new method suitable and helpful in carrying on a business does not "work a change in the use." *Firth v. Scherzberg, supra.*[8] The trash transfer station represents the adoption of changed procedures in the Applicants' sanitation collection service. It is part and parcel of the use to which the Applicants have exclusively and continuously devoted their property since 1967.

Therefore, the Applicants sanitation collection service is a pre-existing non-conforming use predating the adoption of the Maxatawny Township Zoning Ordinance that is allowed reasonable expansion to operate a trash transfer station and the Applicants have the right to continue the use of their property for a trash transfer station provided: ...

(Board opinion, 11/18/87, p. 13, R.R. p. 226a) (footnote added).

8.   366 Pa. 443, 77 A.2d 443 (1951). The Board cites this case for the proposition that neither the natural growth of a business, existing at the time of the enactment of a zoning ordinance, nor the adoption thereafter of more modern instrumentalities, suitable and helpful in carrying on the business, works a change of use in legal contemplation.

We find that the Board did not commit an error of law nor abuse its discretion in finding the trash transfer station to be an expansion of the pre-existing non-conforming use, and we affirm its determination.

We will next review the conditions imposed by the Board on the use of the trash transfer station to determine whether the Board had the authority to do so, pursuant to the Zoning Ordinance, and whether the Board's authority to impose certain conditions was pre-empted by DER pursuant to the Solid Waste Management Act (SWMA).[9]

### Conditions 1, 2, 3, 4, 10

1. The applicants' sanitary collection service, including the trash transfer station, is limited to collection, receipt, and transfer of only residential and commercial waste.

2. No hazardous waste may be collected, received, or transferred at this facility.

3. To remain within the permitted expansion criteria for pre-existing non-conforming uses, the trash transfer station must be operated at 50% of the Department of Environmental Resources current permit of 180 cubic yards per day or 90 cubic yards per day. However, this limitation may be increased to the 180 cubic yard per day DER permit limit upon showing the Zoning Hearing board that the public's health, safety, or welfare will not be affected by an increase.

4. To ensure that the number of trucks using the Applicant's trash transfer station remains within 50% of the Applicants' current 180 cubic yard per day DER permit, the Applicants shall on or before the 7th day of each month furnish the Township's Zoning Officer with the report they submit to DER that sets forth the number of trucks using the Applicants' facility during the prior month.

. . . . .

9. Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

10. Storage of residential and commercial waste will only be permitted inside the building where the trash transfer station is operated and any storage within this building shall be in closed containers or closed trucks and must be removed to a landfill within twenty-four (24) hours of receipt.

██ The Board, in Conditions 1, 2, 3, 4, and 10, restricted the type of waste to be processed at the trash transfer station as well as the volume of waste to be processed, and imposed the requirement that storage of the waste must be inside the building in closed containers and such waste must be transported to a landfill within 24 hours.

The Hills argue that the Board's authority to impose such regulations was pre-empted by DER pursuant to the SWMA. The permit issued by DER is a permit for operation of a "municipal waste transfer station facility." Section 103 of the SWMA, 35 P.S. § 6018.103, defines "municipal waste" and "transfer facility" as follows:

"Municipal waste." Any garbage, refuse, industrial lunchroom or office waste and other material including solid, liquid, semisolid or contained gaseous material resulting from operation of residential, municipal, commercial or institutional establishments and from community activities and any sludge not meeting the definition of residual or hazardous waste hereunder from a municipal, commercial or institutional water supply treatment plant, waste water treatment plant, or air pollution control facility.

"Transfer facility." A facility which receives and processes or temporarily stores municipal or residual waste at a location other than the generation site, and which facilitates the transportation or transfer of municipal or residual waste to a processing or disposal facility. The term includes a facility that uses a method or technology to convert part or all of such waste materials for offsite reuse. The term does not include a collection or processing center that is only for source-separated recyclable materials, including clear glass, colored glass, aluminum,

steel and bimetallic cans, high-grade office paper, newsprint, corrugated paper and plastics.

The DER, by its permit, set forth the type and volume of waste to be processed by the Hills' trash transfer station. Section 202 of the SWMA, 35 P.S. § 6018.202, in effect during the period of these proceedings,[10] provided:

(a) Each municipality shall be responsible for the collection, transportation, processing, and disposal of municipal waste which is generated or present within its boundaries and shall be responsible for implementing its approved plan as it relates to the storage, collection, transportation, processing, and disposal of its municipal wastes.

(b) In carrying out its responsibilities, any such *municipality* may adopt ordinances, regulations and standards for the storage and collection of municipal wastes which shall be not less stringent than, and not in violation of, the rules, regulations, standards, and procedures of the department for the storage, collection, transportation, processing and disposal of municipal waste. Any ordinances, regulations and standards so adopted shall be made a part of the plan required in section 201. (Emphasis added.)

We find nothing in the Zoning Ordinance herein pertaining to the operation of trash transfer stations; the ordinance does not contain regulations enacted by the municipality regarding trash transfer stations. The Board, therefore, was without authority to impose restrictions on the operation of the trash transfer station, as it did. Accordingly, we strike Conditions 1, 2, 3, 4 and 10, as such matters were properly within the authority of DER to control.

### Conditions 5 and 6

5. The trash transfer station cannot be used by outside refuse haulers on Saturdays or Sundays.

---

**10.** This section was repealed by the Municipal Waste Planning, Recycling and Waste Reduction Act, Act of July 28, 1988, P.L. 556, *as amended,* 53 P.S. §§ 4000.101–4000.1904. The statute now gives control of matters regarding waste collection and disposal to local municipalities, as relevant.

6. The trash transfer station's hours of operation shall be between 7:00 A.M. to 5:00 P.M. Monday through Friday.

■ In Conditions 5 and 6, the Board limited the hours and days of operation of the trash transfer station. As previously stated, we find nothing in the Zoning Ordinance regarding the regulation of a trash transfer station's hours and days of operation. However, Mr. Hill testified before the Board, and the Board found as a fact, that the trash transfer station operates from 7:00 a.m. to 4:30 p.m. Monday through Friday (N.R., 9/1/87, p. 27, R.R. p. 27a; Finding of Fact 25, R.R. p. 219a.) Conditions 5 and 6 do not restrict the operation of the trash transfer station but only provide that it continue as it has been operated. The record is devoid of any application by the Hills requesting additional hours and days of operation. Conditions 5 and 6 merely reflect the past and current operation of trash transfer station and will be affirmed.

## Conditions 7 and 9

7. No obnoxious odor or health hazard shall be created in the operation of this trash transfer station.

.    .    .    .    .

9. The Applicants' facility must be kept clean and sanitary on a daily basis.

■ The Board imposed the requirement that no obnoxious odor or health hazard shall be created and that the trash transfer station must be kept clean and sanitary on a daily basis in Conditions 7 and 9. Section 406.1(c) of the Zoning Ordinance sets forth provisions for the operation of general industrial uses, including the requirement that no offensive odors or noxious, toxic or corrosive gases or fumes shall be emitted. Accordingly, we find support in the Zoning Ordinance and the record for the imposition of Conditions 7 and 9 by the Board.

## Condition 11

11. All transfer and compacting of trash shall occur entirely within this building.

■ In Condition 11, the Board imposed the requirement that all transfer and compacting of trash shall occur entirely within the building. The Board, in its opinion, determined that although the Zoning Ordinance does not explicitly provide for a trash transfer station as a permitted use, it may be a permitted use under the "I–Industrial" uses. Section 406.1 of the Zoning Ordinance sets forth certain general industrial uses which shall be carried on in a completely enclosed building. In addition, this also is a condition which does not restrict the current operation of the trash transfer station. Mr. Hill testified that the transfer operations take place inside the building and that no loose debris leaves the building. (N.T., 9/1/87, p. 27, R.R. p. 27a.) Condition 11 conforms to Mr. Hill's testimony as to the operation of the trash transfer station, and accordingly is proper.

## Condition 12

12. Sound deadening or acoustical barriers shall be installed within 75 feet of the building where the trash transfer station is located to limit the sound from truck and front-end loader engines. The method for accomplishing this shall be presented for review to the Zoning Officer and approval by the Zoning Hearing board no later than January 15, 1988.

■ The Board, in Condition 12, imposed the requirement that the Hills install "sound deadening or acoustical barriers." It is true that noise may be a threat to the public health, safety and welfare; Section 406.1(c) of the Zoning Ordinance provides that objectionable noises shall be muffled. However, we strike Condition 12 because we find there is no evidence in the record that noise from the trash transfer station adversely affected the public health, safety and welfare. The obligation of presenting evidence with respect to a general detriment to health, safety and welfare

lies with the objector to a proposed use; the objector must show that any adverse impact as a result of the proposed use is abnormal, and that there is a high probability of occurrence. *Stein v. Easttown Township Board of Supervisors*, 110 Pa.Commonwealth Ct. 293, 532 A.2d 906 (1987).

The only evidence concerning noise is that the trucks' engines are left running during their unloading operations. No evidence was offered as to the extent, duration and volume of the engine noise, nor did the Board in its opinion or conditions set forth an acceptable level or range of noise. The Board set forth in Condition 12 that the Hills shall present the method for decreasing the noise to the Zoning Officer and the Board for review and approval. This condition fails to set forth any standards but leaves the determination of the method to be used solely to the unbridled discretion of the Zoning Officer and the Board. It is noted that the Zoning Officer's authority, pursuant to Section 614 of the MPC, 53 P.S. § 10614, is purely ministerial:

> The zoning officer shall administer the zoning ordinance in accordance with its literal terms, and shall not have the power to permit any construction or any use or change of use which does not conform to the zoning ordinance....

Absent anything in the Zoning Ordinance, it is impossible for the Zoning Officer to determine whether the mandated sound deadening or acoustical barriers comply with Condition 12. Therefore, we find that Condition 12 is improper because it is vague and it does not afford any standard to determine compliance either by the Hills or the Zoning Officer or the Board, except the unbridled discretion of the Zoning Officer and the Board.

### Condition 8

8. No other access drive to the Applicants' property will be permitted unless the Maxatawny Township Board of Supervisors' approval is obtained.

The Board set forth, in Condition 8, that no other access drive to the Hills' property will be permitted unless

the Maxatawny Township Board of Supervisors' approval is obtained. Section 501.5 of the Zoning Ordinance sets forth that every building shall be so located on lots as to provide safe and convenient access for servicing, fire protection, and required off-street parking. However, we strike Condition 8 because there was no application by the Hills for another access drive to their property before the Board; the Board's imposition of Condition 8 was beyond its scope and authority in this matter.

### Conditions 13, 14 and 15

13. It is recommended that Maxatawny Township explore what traffic control measures can be installed near the Applicants' property to notify motorists that trucks may be crossing Lyons Road.

14. All other applicable federal, state, local, and Township laws and regulations shall be followed by the Applicants, including those of the Pennsylvania Department of Environmental Resources.

15. Should these conditions not be complied with or should a change of circumstances arise affecting these conditions, the Board reserves the right upon proper application of the Applicants, the Township, etc. to review these conditions.

Conditions 13, 14 and 15 state general recommendations. The conditions deal with unspecified future conduct and, as such, are precatory. We strike Conditions 13, 14 and 15 as invalid.

Finally, the Hills argue that the Maxatawny Township Zoning Ordinance unconstitutionally excludes the use of land for the operation of a trash transfer station. Neither the Township nor any interested and affected persons have challenged the Board's grant of the Hills' application for the addition of a trash transfer station to the operation of their sanitation collection business. The Hills are permitted to operate their sanitation collection business with a trash transfer station as they requested in the District

where the business is sited, and whether or not such use is permitted in any other zoning district of the Township is not relevant herein.

The order of the Court of Common Pleas of Berks County is affirmed in part and reversed in part.

PELLEGRINI, J., concurs in the result only.

## ORDER

AND NOW, this 27th day of September, 1991, it is ORDERED as follows:

1. The trial court's determination, by its order of dismissal of the Hills' appeal, that the approval of the trash transfer station constituted an expansion of a pre-existing non-conforming use is affirmed.

2. The trial court's determination, by its order of dismissal, affirming Conditions 1, 2, 3, 4, 8, 10, 12, 13, 14 and 15 is reversed and said Conditions are stricken.

3. The trial court's determination, by its order of dismissal, affirming Conditions 5, 6, 7, 9 and 11 is affirmed.

4. The trial court's determination, by its order of dismissal, which affirmed that the Maxatawny Township Zoning Ordinance does not unconstitutionally exclude the use of land for the operation of a trash transfer station is affirmed.