**GRETH DEVELOPMENT GROUP, INC., Appellant**

v.

**ZONING HEARING BOARD OF LOWER HEIDELBERG TOWNSHIP, William G. Koch, Sr., Roberta F. Koch, Marcia Heere and Lower Heidelberg Township.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2006.

Decided March 1, 2007.

---

J. Kitridge Fegley, Reading, for appellant.

Socrates J. Georgeadis, Wyomissing, for appellee, Lower Heidelberg Township.

Francis M. Mulligan, Reading, for appellee, William G. Koch, Sr., Roberta F. Koch and Marcia Heere.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Greth Development Group, Inc., appeals an order of the Court of Common Pleas of Berks County (trial court) denying Greth's application for a special exception. The trial court affirmed the decision of the Zoning Hearing Board of Lower Heidelberg Township (Board) that Greth failed to show that there would be adequate sewage treatment capacity for its project. To

reach this conclusion the Board allocated existing sewage capacity to another pending project, thereby reducing the remaining capacity below what was needed for Greth's proposed special exception use. In this appeal we consider whether the Board had authority to allocate public sewer capacity in this way. For the reasons set forth below, we hold that it does not.

On January 7, 2004, Greth entered into an agreement of sale for 172.03 acres of property located in Lower Heidelberg Township, known as the "Bollman Tract" (Property). The sale is contingent upon Greth receiving approvals necessary for its intended "construction, development and sale of at least One Hundred Seventy-Two (172) Residential Lots." Reproduced Record at 185a. (R.R.——). Presently, the Property is divided by a zoning boundary, with 135.01 acres located in an A–1 Agricultural Preservation Zoning District [1] and the remaining 37.02 acres in an R–6 Suburban Residential Zoning District.

Under the Lower Heidelberg Zoning Ordinance of 1973 (Zoning Ordinance),[2] Greth's intended development in an A–1 District is permitted by special exception, not by right. Section 153(b) of the Zoning Ordinance authorizes the grant of a special exception to construct single-family detached dwellings in the A–1 District provided, *inter alia,* that "[p]ublic or community sewer and water facilities shall be provided."

On May 18, 2004, Greth filed an application with the Board, requesting a special exception to develop up to 82 single-family detached dwellings on the portion of the Property zoned A–1. At a public hearing, Walter T. Greth, president of Greth, testified and provided a letter dated December 9, 2004, from the Lower Heidelberg Township Municipal Authority, stating that there were 110 EDU's [3] available for the entire Property, which includes both the A–1 and R–6 tracts. The Authority also stated that it would reserve the 110 EDU's for Greth's project "upon receipt of [a] check for 25% of the total purchase price ($115,692.50)." R.R. 204a.

William Koch, who owns land bordering the Property, testified against the proposed special exception. He stated that it was his understanding that Greth intended to develop 77 housing units on the R–6 section of the Property, which would involve committing 77 of the 110 available EDU's. Because only 33 EDU's would be

1. Section 151 of the Zoning Ordinance describes an A–1 Agricultural Preservation District as follows:

One purpose of this district is to encourage the preservation of the most suitable Farm land within the Township. The areas included in this district are predominantly [u]sed for Agriculture at the present time and soils mapping has indicated they include very suitable Farm land. Future population projections for the Township have been analyzed and future population growth can be accommodated in other Zoning Districts given their size and permitted densities. Another purpose of this district is to discourage on-site sewage disposal in portions of the Township which soils mapping has indicated as being hazardous for on-site sewage disposal (because of the presence of limestone soils) and having severe limitations for on-site sewage disposal. Residential development is prohibited unless off-site sewer and water facilities are provided.
Section 151, Zoning Ordinance.

2. The Zoning Ordinance referenced in this matter is no longer in effect, having been superceded by the adoption of the Township Board of Supervisors of the Southwestern Berks County Zoning Ordinance of 2004 on December 20, 2004. Any references in the opinion are solely to the Lower Heidelberg Zoning Ordinance of 1973.

3. An EDU is the unit of sewer capacity necessary to serve one individual dwelling unit/lot. Greth's Brief, p. 7, n. 7.

available for the A–1 tract, Koch urged the Board to reject Greth's application for a special exception for lack of sufficient sewer capacity. Noting that there was no evidence that the 77 EDU's had been reserved or committed to the R–6 tract, the Board continued the hearing.

At the next hearing, Koch presented a preliminary plan obtained from the Lower Heidelberg Planning Commission for Greth's planned Cacoosing Crossing Project on the R–6 tract. The project contained 77 lots, requiring 77 sewer connections. Koch argued that because the preliminary plan had been filed with the Planning Commission, the Board should consider the 77 EDU's as committed and therefore unavailable for the A–1 tract. In addition, he urged the Board to allocate the EDU's to the R–6 tract rather than the A–1 tract because the latter is comprised of highly productive farmland and deserved protection. Koch further opined that the agricultural activities on the land adjacent to the Property, particularly with respect to the odors they generate, might be displeasing to the future homeowners in the A–1 portion of the Property should Greth be allowed to proceed.

At the conclusion of the proceeding, the Board issued a written decision in which it found that Greth had satisfied all the requirements for a special exception, except for the public sewer requirements set forth in Section 153(b)(1) of the Zoning Ordinance. In reaching this conclusion, the

Board held that as a matter of law, Greth "must first allocate its EDU['s] of Public Sewer Service to the section of the Subject Property zoned R–6, planning for which is currently underway with the Township." R.R. 21a. The Board further found that allocation of the EDU's to the R–6 tract left 33 EDU's available for the A–1 tract. Because the proposed development of the A–1 tract required 82 EDU's, the Board denied the proposed special exception based upon Greth's failure to prove the existence of adequate public sewer service. The trial court affirmed the decision, and the present appeal followed.

▮▮▮ On appeal,[4] Greth presents two issues for our consideration.[5] First, it argues that the Board lacked authority to allocate 77 of the available EDU's to the proposed development of the R–6 portion of the Property in order to deny a special exception for development on the A–1 portion of the Property. Greth contends that the special exception application to the Board and the preliminary development plan submitted to the Planning Commission are separate filings and should have no bearing on each other. Stated otherwise, before actual construction can take place, the Planning Commission will ensure there is adequate sewage capacity for whatever Greth builds. This allocation decision is not for the Board to make. Second, Greth argues, alternatively, that the Zoning Ordinance and the Township's Subdivision and Land Development Ordinance (SALDO) must be read in *pari materia.*

4. When the trial court takes no additional evidence in zoning appeals, this Court's scope of review is limited to determining whether the zoning hearing board committed an error of law or manifestly abused its discretion. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). An abuse of discretion occurs when the board's findings are not supported by substantial evidence in the record. Id. Sub-

stantial evidence is that relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached. *Borough of Fleetwood v. Zoning Hearing Board of Borough of Fleetwood,* 538 Pa. 536, 540, 649 A.2d 651, 653 (1994).

5. For purposes of our opinion, we have re-ordered Greth's arguments.

When construed together, they compel the conclusion that actual sewer capacity is to be determined by the Planning Commission at the time the Final Plan is submitted and not by the Board at the time of application for a special exception.

■ A special exception is a use that is expressly permitted provided the applicant meets certain enumerated standards. *Southdown, Inc. v. Jackson Township Zoning Hearing Board,* 809 A.2d 1059, 1064 n. 6 (Pa.Cmwlth.2002).

"An 'exception' in a zoning ordinance is one allowable where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted, are found to exist." Thus, an exception has its origin in the zoning ordinance itself. It relates only to such situations as are expressly provided for and enunciated by the terms of the ordinance. *The rules that determine the grant or refusal of the exception are enumerated in the ordinance itself. The function of the board when an application for an exception is made is to determine that such specific facts, circumstances and conditions exist which comply with the standards of the ordinance and merit the granting of the exception.*

*Broussard v. Zoning Board of Adjustment of City of Pittsburgh,* 831 A.2d 764, 769 (Pa.Cmwlth.2003) (citations omitted; emphasis added). The applicant for a special exception has the burden of proving that the proposed special exception use satisfies the standards in the zoning ordinance. *Shamah v. Hellam Township Zoning Hearing Board,* 167 Pa.Cmwlth. 610, 648 A.2d 1299 (1994). Once an applicant has made out a *prima facie* case, the burden shifts to any objectors to present sufficient evidence that the proposed use has a detrimental effect on the public health, safety, and welfare. *Broussard,* 831 A.2d at 772.[6]

■ Zoning regulates the use of land, and typically an application for special exception need not address issues of sewage capacity. *Schatz v. New Britain Township Zoning Hearing Board of Adjustment,* 141 Pa.Cmwlth. 525, 596 A.2d 294 (1991). However, where the provision of sewage capacity is specifically required by the zoning ordinance, a special exception can be denied if the applicant fails to establish that it can meet the sewage treatment requirements. *East Manchester Township Zoning Hearing Board v. Dallmeyer,* 147 Pa.Cmwlth. 671, 609 A.2d 604 (1992).

■ Here, Section 153(b)(1) of the Zoning Ordinance provides that a special exception in an A–1 zoning district requires that "[p]ublic or community sewer and water facilities shall be provided." Thus, the Zoning Ordinance is explicit that a sewer system must be provided in order for a special exception to issue. As such, under *Dallmeyer,* Greth had an obligation to establish that it could fulfill its obligation to provide sewer facilities in order for the special exception to issue.

In this regard, Greth maintains that it undisputedly met all the standards and criteria set forth under the Zoning Ordinance. It contends it provided proof of sufficient public sewer capacity to service

---

6. The Board also contends that should this Court disagree with its interpretation and find that Greth met the special exception requirements, we should affirm the trial court's decision based on its finding of harm beyond what is normally contemplated by residential use. This finding, however, is not supported by the record. The Board found as fact that the objectors did not present evidence that the proposed use would be more intense than contemplated by the Ordinance. Finding of Fact, No. 48. Thus the objectors did not carry their burden of showing the proposed development would be detrimental to the public health, safety and welfare. *Broussard,* 831 A.2d at 772.

the proposed development through a letter from the Municipal Authority indicating that it had 110 EDU's available. Because the proposed application required only 82 EDU's for the A–1 tract, the availability of 110 EDU's satisfied its burden of proof under the Zoning Ordinance, but for the Board's "allocation theory."

With regard to the Board's "allocation theory," Greth contends that the Board was without authority to order it to allocate 77 EDU's to the R–6 tract development plan because there is nothing in the Zoning Ordinance that requires the EDU's to be allocated first to the "by-right" residential-zoned district rather than the proposed residential development permitted "by special exception." Greth further contends that the Board's requirement that it allocate and use the EDU's in the R–6 tract before developing and using the EDU's in the A–1 tract is not a reasonable interpretation of the Zoning Ordinance. Greth asserts that the Board is rewriting the Zoning Ordinance rather than interpreting it; thus, no deference is due its interpretation.

The Board counters that its "allocation theory" was a reasonable interpretation of the Zoning Ordinance and will promote residential development in the R–6 District as opposed to developing prime agricultural land in the A–1 District. As such, the Court should defer to its interpretation. Further, the Board contends that it properly rejected the special exception because Greth's statement that there is sewer capacity available is a mere promise, and under Pennsylvania law a "promise" is insufficient to demonstrate actual compliance. *See, e.g., Edgmont Township v. Springton Lake Montessori School, Inc.,* 154 Pa.Cmwlth. 76, 622 A.2d 418 (1993) (the standard to be observed is whether the plan as submitted complies with the specific ordinance requirements at the time the application is submitted; a promise to comply with the ordinance is insufficient).

■■■■■ As recognized by the Board, when statutory language is not explicit, courts should give great weight and deference to the interpretation of a statute or regulation by the administrative agency that is charged with the duty to execute and apply the provisions at issue. *In re Thompson,* 896 A.2d 659, 669 (Pa.Cmwlth. 2006). However, a zoning board is not a legislative body, and it lacks authority to modify or amend the terms of a zoning ordinance. *Hill v. Zoning Hearing Board of Maxatawny Township,* 142 Pa.Cmwlth. 539, 597 A.2d 1245, 1251 (1991). "[Z]oning boards ... must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law." *Ludwig v. Zoning Hearing Board of Earl Township,* 658 A.2d 836, 838 (Pa.Cmwlth.1995) (quoting *In re Kline Zoning Case,* 395 Pa. 122, 125, 148 A.2d 915, 916 (1959)). Thus, the Board is required to apply the terms of the Zoning Ordinance as written rather than deviating from those terms based on an unexpressed policy.

With these principles in mind, we turn to the sections of the Zoning Ordinance relevant to the grant of special exceptions. The Zoning Ordinance requires the Board to grant special exceptions where the applicant meets the standards; it states, in relevant part, as follows:

Where the Board of Supervisors, in this Chapter, has stated special exceptions [are] to be granted or denied by *the Zoning Hearing Board pursuant to express standards* and criteria, the Board shall hear and decide requests for such special exceptions in accordance with such standards and criteria. *In granting a special exception, the Board may*

*attach such reasonable conditions and safeguards,* in addition to those express in this Chapter, as it may deem necessary to implement the purposes of this Chapter and the Pennsylvania Municipalities Planning Code....

Section 654, Zoning Ordinance (emphasis added). The standards for a special exception in an A–1 District state, in relevant part, that:

> The following Uses are permitted [in an A–1 District] when Special Exceptions are granted by the [Board]. Standards to be Used in determining whether a Special Exception should be granted are found in [Section 604] of this Ordinance.
>
> \* \* \*
>
> (b) Single–Family Detached Dwellings, provided that:
> (1) Public or community sewer and water facilities shall be provided.

Section 153(b)(1), Zoning Ordinance. In determining whether the special exception should be granted, "the [Board] shall determine that [s]ervices and utilities are available to adequately service the proposed [u]se." Section 604(c)(7), Zoning Ordinance.

Thus, under the Zoning Ordinance, the Board must determine whether there is adequate public sewage capacity for the permitted use, in this case single-family detached dwellings. If an applicant makes out a *prima facie* case, the application must be granted unless the objectors present sufficient evidence that the proposed use has a detrimental effect on the public health, safety, and welfare. *Cf. In re Thompson,* 896 A.2d 659, 670 (Pa. Cmwlth.2006) (because the law regarding conditional uses and special exceptions is virtually identical, the burden of proof standards are the same). In granting the special exception, the Board may attach conditions it believes necessary to imple-

ment the Zoning Ordinance. Section 654, Zoning Ordinance.

 In the present matter, the Board chose not to impose conditions upon Greth's special exception but to deny the application entirely. In doing so, the Board concluded, as a matter of law, that Greth had to allocate available sewer capacity to another development project not before the Board, thereby making it impossible for Greth to prove the availability of adequate sewer service. The problem with the Board's "allocation theory" is that it ignores well settled law that a special exception is a use that is *expressly permitted. See, e.g., Southdown,* 809 A.2d at 1063. A special exception is neither special nor an exception, but a use expressly contemplated that evidences a legislative decision that the particular type of use is consistent with the zoning plan and presumptively consistent with the health, safety and welfare of the community. *Broussard,* 831 A.2d at 772.

 Here, the Zoning Ordinance does not state that land in the R–6 District must be fully developed before a special exception can be granted in an A–1 District. Nor does the Zoning Ordinance require an applicant to allocate available public sewer capacity to other projects in deciding whether to grant a special exception use in an A–1 District. Rather, the Zoning Ordinance expressly provides that single-family detached dwellings are permitted on property zoned A–1 provided adequate public or community sewer services are provided. Thus, the Board erred in substituting its version of what it believed the Zoning Ordinance should state for that which was actually legislated by the Township. *Piscioneri v. Zoning Hearing Board of Borough of Munhall,* 523 Pa. 597, 599–600, 568 A.2d 610, 611 (1990) (holding that neither zoning boards nor

courts may substitute their concept of a good ordinance for the one actually enacted).[7]

In rejecting Greth's application for a special exception, the Board also exceeded its authority. It departed from its function of determining whether the proposed use fell within the terms of the Zoning Ordinance and focused instead on implementing goals that it believed fell within the spirit of the legislative enactment. It is the governing body of the municipality that has the power to enact laws to regulate land use pursuant to the police power. *Hill v. Zoning Hearing Board of Maxatawny Township*, 142 Pa. Cmwlth. 539, 597 A.2d 1245, 1248 (1991). A zoning board's power and authority is limited to that conferred expressly by the legislature, or by necessary implication, and this granted authority is to be strictly construed. *In re Leopardi*, 516 Pa. 115, 119, 532 A.2d 311, 313 (1987). The legislature has delegated specific powers to zoning boards to, *inter alia*, hear and decide challenges to the validity of any land use ordinance, hear and decide appeals from a determination of the zoning officer or municipal engineer or zoning officer, and hear applications for variances and special exceptions. Sections 909.1, 910.2, 912.1 of the MPC, 53 P.S. §§ 10909.1, 10910.2, 10912.1. Here, the Board exceeded its above-listed enumerated powers.

The MPC does not authorize the Board to direct the allocation of sewer capacity or to require development in a "by-right" district prior to permitting development in a "by residential exception" district, or to regulate generally land development in the Township. However, the question remains whether that authority exists by implication or interpretation, as urged by the Board. We hold that it does not.

In *In re Leopardi*, our Supreme Court considered "whether a zoning hearing board is empowered to order the removal of an offending structure." *Id.* at 119, 532 A.2d at 313. The Court concluded that, "[t]he power to issue enforcement or remedial orders is not expressly conferred upon zoning hearing boards in [the] enabling statute, and neither remedial nor enforcement powers are implied in the powers that are delegated." *Id.* at 120, 532 A.2d at 313. In the present case, the Board was no more empowered to direct the allocation of sewer capacity between development projects or mandate development priorities than was the Board in *Leopardi*

---

7. If there were found to be an ambiguity in the Zoning Ordinance, the Board's limiting interpretation would be inconsistent with the rules of statutory construction set forth in the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101—11202(MPC). Section 603.1 of the MPC provides that "[i]n interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction." Section 603.1 added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1. "[Z]oning ordinances are to be liberally construed to allow the broadest possible use of land." *Light of Life Ministries, Inc. v. Cross Creek Township, et. al*, 560 Pa. 462, 467, 746 A.2d 571, 573 (2000)(quotations, citations omitted). While the legislative intent of the governing body which enacted the ordinance is of primary concern when interpreting a zoning ordinance, the letter of the ordinance is not to be disregarded under the pretext of pursuing its spirit. *Borough of Fleetwood v. Zoning Hearing Board of Borough of Fleetwood*, 538 Pa. 536, 548, 649 A.2d 651, 656 (1994). It is an abuse of discretion for a zoning hearing board to narrow the terms of an ordinance and further restrict the use of property. *In re Appeal of Shirk*, 114 Pa.Cmwlth. 493, 539 A.2d 48, 51 (1988).

empowered to direct the demolition of a garage that encroached on the setback requirements.

No matter how well intentioned, the Board is not authorized to allocate sewer capacity in reviewing a special exception application. Allocation of sewer capacity between proposed development projects is the responsibility of the Heidelberg Planning Commission, which has exclusive authority to regulate subdivision and land development within the Township.[8] The Planning Commission phase of review will decide how many houses will be built on each part of the Property to ensure that construction falls within the limits of existing sewage treatment capacity.[9]

For these reasons, we reverse the trial court and remand this matter for consideration of whether Greth's application for a special exception satisfies the standards for a special exception set forth in the Zoning Ordinance. In doing so, the Board may not allocate sewer capacity between proposed development projects.

### ORDER

AND NOW, this 1st day of March, 2007, the order of the Court of Common Pleas of Berks County dated May 9, 2006, in the above captioned matter is hereby reversed and the matter remanded for further proceedings consistent with this opinion on the application for special exception submitted by Greth Development Group, Inc.

Jurisdiction relinquished.

**8.** Article V of the MPC governs subdivision and land development and grants the governing body the power to regulate subdivisions and land development by enacting a subdivision and land development ordinance. Section 501 of the MPC, 53 P.S. § 10501. Pursuant to this authority, the Township enacted a SALDO which provides "for the control of the subdivision and development of land." Section 101, SALDO. The purpose of the SALDO is to "provide uniform standards to guide the subdivision, resubdivison, and development of land in the Township to insure orderly growth and development, the conservation, protection and proper use of land; and to provide adequate provisions for traffic circulation, recreation, light and air, utilities and services" Section 103, SALDO. Under Section § 10909.1(b) of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. 10909.1(b), it is the governing body that has exclusive jurisdiction to render decisions on subdivision and land use applications under Article V of the MPC, and not the Board.

**9.** Because of our disposition of this issue, we need· not address Greth's remaining issue, whether the Zoning Ordinance and SALDO must be construed in *pari materia*.