IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Borough of Pitcairn         :
                                         :
            v.                        :     No. 1253 C.D. 2021
                                         :     Argued: October 10, 2023
The Zoning Hearing Board of     :
the Borough of Pitcairn and       :
MonJon, LLC                    :
                                         :
Appeal of: MonJon, LLC        :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                  FILED: January 22, 2024

        MonJon, LLC (MonJon) appeals from the order entered in the Court of Common Pleas of Allegheny County (trial court), reversing the order of the Zoning Hearing Board (Board) of the Borough of Pitcairn (Borough). After careful review, we affirm the order of the trial court.

## I. BACKGROUND[1]

        MonJon owns property located at 366 Broadway in the Borough of Pitcairn (the Property), where it conducts its business as a rooming/boarding house. *See* N.T. Hr'g, 7/21/20, at 25-26.[2] The building consists of individual units, which

---

[1] The Board did not produce written findings of fact and conclusions of law but, rather, issued its adjudication during a hearing. *See* Notes of Testimony (N.T.) Adjudication, 11/30/20, at 3-8. The trial court opinion accurately reflects the record and the Board's findings, such as they are. *See* Trial Ct. Op. & Order, 10/7/21, at 1-4.

[2] The transcript of this hearing does not appear in the original record. It is part of MonJon's Reproduced Record. *See* Reproduced Record (R.R.) at 154-227. Neither party has disputed its accuracy or authenticity. Pursuant to Pa.R.A.P. 1921, we may consider a transcript included in a

are often occupied on a short-term basis and which house between one and two individuals. *See id.* at 41.

Per Zoning Ordinance No. 27-1103, "[n]o dwelling house, apartment or other living quarters, or commercial establishment may be occupied when previously vacated after the date of this Chapter until such time as the owner or his agent has secured an occupancy permit to be issued by the Zoning Officer." *See* Borough of Pitcairn Zoning Ordinance § 27-1103(2) (2011). Additionally, "[t]he application for the permit shall be accompanied by a fee, in an amount as established from time to time by resolution of the Borough Council" and, if further inspections are required, "then an additional fee, also in an amount as established from time to time by resolution of the Borough Council, will be required for each additional inspection before an occupancy permit will be issued." *See id.* at § 27-1103(4).

In the instant case, the Borough assessed MonJon a $75 occupancy permit every time one of the units had a new occupant. *See* N.T. Hr'g, 7/21/20, at 50. The Borough has cited MonJon numerous times for violating the zoning ordinance. *See id.* at 14-22. MonJon appealed the enforcement order, but the zoning officer denied MonJon's request. Appeal of Not. of Zoning Violation, 2/6/20, at 2 (unpaginated).[3]

---

reproduced record and not in the original record, if neither party disputes its accuracy. *See Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012) (considering written plea colloquy in reproduced record where the accuracy of the reproduction had not been disputed); *see also Prieto Corp. v. Gambone Constr. Co.*, 100 A.3d 602, 605 n.2 (Pa. Super. 2014) (holding that the Superior Court could consider a transcript included in the reproduced record, but not in the original record, if neither party disputes its accuracy). We note additionally that Superior Court cases are not binding authority but may "offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[3] This document does not appear in the original record but is part of MonJon's Reproduced Record. *See* R.R. at 1. Neither party has disputed its accuracy or authenticity. As noted, *supra*, for these reasons, we may consider the document. *See* Pa.R.A.P. 1921; *see Brown*, 52 A.3d at

MonJon appealed to the Board, contending that the zoning ordinance had been applied arbitrarily, unreasonably, and discriminatorily in violation of its equal protection rights, and that the zoning ordinance was not substantially related to a police power purpose. *See id.* MonJon requested a determination that the Borough's enforcement conduct was improper or, in the alternative, a variance. *See id.* The Board convened an evidentiary hearing,

Before the Board, MonJon argued that the Property was a hotel/motel and, accordingly, not subject to the landlord/tenant ordinances and occupancy, inspection, and fee requirements. *See* N.T. Hr'g, 7/21/20, at 60-61. MonJon also offered testimony regarding the Property's physical characteristics and operation. *See* N.T. Hr'g, 7/21/20, at 24-59. Additionally, the Borough provided a history of property inspections and issuances of violations. *See* N.T. Hr'g, 7/21/20, at 14-22.

On November 30, 2020, the Board issued its adjudication and determined that the Property was subject to the zoning ordinance as a dwelling house.[4] *See* N.T. Adjudication, 11/30/20, at 4-5. The Board further rejected MonJon's assertion that the Property was a hotel/motel because it lacked the

---

1145 n.4 (considering written plea colloquy in reproduced record where the accuracy of the reproduction had not been disputed).

[4] The zoning ordinance does not define a "dwelling house." The closest definition provided by the zoning ordinance is "dwelling unit," which is defined as "a structure or portion thereof designed or used as the principal place of residence of one family." *See* Zoning Ordinance § 27-1301. However, this does not appear applicable to the property. The zoning ordinance also defines "family" as "one or more persons occupying a premise and living as a single housekeeping unit, as distinguished from a group occupying a boarding house, lodging house, club, fraternity or hotel." *See id.* By these definitions, the Property is different than a dwelling unit, which is occupied by a family, and appears more closely related to a "boarding house" occupied by an unrelated group of persons.

3

amenities of a hotel (including room service, wake up calls, cleaning services, services to individual units etc.).[5] *See id.*

Nevertheless, the Board found that MonJon was entitled to a use variance. *See id.* at 5-7. The Board concluded that (1) a hardship existed because of the "unique characteristics of the Property," namely, that it consisted of 22 individual units being rented on a short-term basis, and (2) the applicant proved that a hardship existed because of the costs and frequency of the occupancy permits. *See id.* Additionally, the Board ordered the Borough to inspect all 22 units of the Property in the spring of each year and charge a $400 annual fee for the inspection, rather than inspections as provided in Section 27-1103.[6] *See id.* at 6. The Board enjoined the Borough from conducting any other inspections or charging any other fees. *See id.* at 6-7.

Although MonJon disagreed with the Board's determination that it was not a hotel/motel, it did not immediately challenge the determination because it had been granted a variance. *See*, *e.g.*, Appellant's Br. at 10. However, the Borough appealed to the trial court, and MonJon filed a petition to intervene. The trial court did not take additional evidence or schedule oral argument.[7] Both parties submitted briefs for the trial court's consideration.

---

[5] The zoning ordinance defines a hotel as "a structure in which lodging or boarding and lodging are provided and offered to the public for compensation and in which ingress and egress to and from all rooms is made through an inside lobby or office supervised by a person in charge at all hours." Zoning Ordinance § 27-1301.

[6] The Board observed that the Property was also under the jurisdiction of the Allegheny County Health Department, which inspected the Property annually.

[7] In its opinion, the trial court cited case law indicating that it was not taking additional evidence and, accordingly, limited its review to determining whether the Board committed an error of law, abused its discretion, or made findings unsupported by substantial evidence. *See* Trial Ct. Op. & Order, 10/7/21, at 2. Accordingly, the trial court did not consider the Board's decision *de novo*.

4

The trial court issued an opinion and order, reversing the Board and denying the variance. *See* Trial Ct. Op. & Order, 10/7/21. The trial court reasoned that the occupancy fees were not a hardship due to unique physical conditions peculiar to the Property but rather due to MonJon's business model. *See id.* at 3. The trial court further observed that the Board lacked authority to amend ordinances or restrict the Borough's ability to enforce the zoning ordinance but effectively had done so when it altered MonJon's fee and inspection requirements. *See id.* Therefore, the court concluded that the Board's decision was *ultra vires*. *See id.* The trial court did not address whether the Property was a hotel/motel.

MonJon timely appealed to this Court.

## II. ISSUES

MonJon raises three issues in its appeal. First, MonJon contends that the trial court erred in reversing the Board's decision because the Board's actions were not *ultra vires*. *See* Appellant's Br. at 8. Second, MonJon contends that the Property is being operated as a hotel/motel and, therefore, not subject to Zoning Ordinance No. 27-1103. *See id.* Finally, according to MonJon, it proved undue hardship with respect to the Property. *See id.*

## III. DISCUSSION[8]

### A. *Ultra Vires* Order

MonJon contends that the Board's actions did not constitute an *ultra vires* act. *See* Appellant's Br. at 12. According to MonJon, the zoning ordinance

---

[8] The parties presented no additional evidence to the trial court. Therefore, our review is limited to determining whether the zoning board committed an abuse of discretion or an error of law. *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 n.1 (Pa. Cmwlth. 2005). As a result, "[w]e do not address any argument related to the trial court's decision." *See Pham v. Upper Merion Twp. Zoning Hearing Bd.*, 113 A.3d 879, 887 n.6 (Pa. Cmwlth. 2015). The zoning board, as factfinder, is the sole judge of credibility of witnesses, weighing their testimony, and

5

does not specifically require a new occupancy permit each time someone moves in or out of a rooming house. *See id.* Thus, MonJon suggests that the Board's decision properly recognized that the property has many individual units, and that it was equitable to order the Borough to charge an occupancy permit fee on an annual basis. *See id.* MonJon argues that because the fees constitute a prohibitive expense to its business, this constitutes an unnecessary hardship, and the Board did not err in interpreting the zoning ordinance in such a manner. *See id.* at 13.

The Borough responds that the decision of the Board was *ultra vires* because the Board lacks authority to amend ordinances. *See* Appellee's Br. at 1. Additionally, because the Board's order prevented the Borough from inspecting the Property, it has improperly granted injunctive relief to MonJon. *See id.* The Borough claims that this is in direct contradiction to established case law. *See id.* at 2.

"An *ultra vires* action is one that is performed without authority to act and beyond the scope of legal authorization." *See Clairton Slag, Inc. v. Dep't of Gen. Servs.*, 2 A.3d 765, 782 (Pa. Cmwlth. 2010) (citations omitted); *see also In re Leopardi*, 532 A.2d 311, 314 (Pa. 1987) (concluding that actions taken outside of a zoning board's statutory authorization are *ultra vires*).

A zoning board is not a legislative body. *Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007). Rather, zoning boards are administrative agencies created by the General Assembly. *Golla v. Hopewell Twp. Bd. of Supervisors*, 452 A.2d 273, 274 (Pa. Cmwlth. 1982). Their power is limited to that conferred expressly by the legislature,

---

resolving any conflicts in testimony. *Metal Green Inc. v. City of Phila.*, 266 A.3d 495, 506 (Pa. 2021). The zoning board may accept or reject the testimony of any witness and may reject even uncontradicted testimony it finds lacking in credibility. *See id.*

or by necessary implication. *See id.* The limit to that power must be strictly construed; a doubtful power does not exist. *In re Leopardi*, 532 A.2d at 313. Where a zoning board exceeds its authority, the order may not stand. *See Greth Dev. Grp., Inc.*, 918 A.2d at 190.[9]

Section 909.1(a) of the Pennsylvania Municipalities Planning Code (MPC),[10] added by the Act of December 21, 1988, P.L. 1329, provides in relevant part that a zoning board is empowered to hear substantive challenges to the validity of land use ordinances[11] without requests for a curative amendment,[12] appeals from

_____

[9] In *Greth Development Group, Inc.*, the applicant requested a special exception to develop up to 82 single-family detached dwellings on its property. *See Greth Dev. Grp., Inc.*, 918 A.2d at 184. Following hearings, the zoning board issued a written decision finding that the applicant had satisfied the requirements for a special exception, except for the public sewer requirements of the township's zoning ordinance. *See id.* at 185. The zoning board found that the proposed allocation of sewer capacity on one tract left an insufficient amount of sewer capacity for another tract and denied the exception on that basis. *See id.* The trial court affirmed. *See id.* On appeal, this Court determined that the board had exceeded its statutory authority by allocating sewer capacity. *See id.* at 190. Accordingly, we reversed the trial court and remanded, so that the board could consider whether the application for special exception satisfied the standards for a special exception set forth in the zoning ordinance and specifically prohibited the board from allocating sewer capacity between proposed development projects. *See id.*

[10] Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101 – 11202.

[11] A zoning ordinance is valid "when it promotes public health, safety or welfare, and its regulations are substantially related to the purpose the [zoning] ordinance purports to serve." *See Plaxton v. Lycoming Cnty. Zoning Hearing Bd.*, 986 A.2d 199, 205 (Pa. Cmwlth. 2009). A substantive validity challenge, generally, attacks a zoning ordinance on substantive due process grounds, "*i.e.* whether an ordinance is substantially related to a legitimate interest." *See id.* The party challenging the zoning ordinance "must establish that [it is] arbitrary and unreasonable and [has] no substantial relationship to promoting the public health, safety and welfare." *See id.*

[12] Except those brought before the governing body pursuant to Sections 609.1 and 916.1(a)(2), added by the Act of December 21, 1988, P.L. 1329. *See* 53 P.S. § 10609.1; 53 P.S. § 10916.1. Essentially, a governing body may hear requests for rezoning and has the jurisdiction to act upon such requests by "[accepting] a landowner's curative amendment, with or without revision, or [adopting] an alternative amendment which will cure the challenged defects." *See* 53 P.S. § 10609.1. In contrast, substantive validity challenges brought before a zoning board do not

7

the determination of zoning officers, and consider applications for variances and special exceptions. *See* 53 P.S. § 10909.1(a). In contrast, it is the governing body[13] that hears substantive validity challenges accompanied by applications for curative amendments to the zoning ordinance itself. Section 909.1(b)(4) of the MPC, 53 P.S. § 10909.1(b)(4). Thus, a zoning board lacks authority to modify or amend the terms of a zoning ordinance. *See Greth Dev. Grp., Inc.*, 918 A.2d at 187. "[Z]oning boards . . . must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law." *See id.*

Additionally, only the municipality or a delegated agent may initiate enforcement actions. *In re Leopardi*, 532 A.2d at 314. These actions are distinct to those functions delegated to the zoning board. *See id.* A zoning board may hear and decide appeals from decisions or actions of the zoning officer, hear and decide challenges to the validity of ordinances and maps, hear and decide requests for variances, and hear and decide requests for special exceptions. *See id.* However, a zoning board may not issue enforcement or remedial orders. *See id.* A zoning board "does not have the delegated jurisdiction to grant injunctions or impose penalties [and] any such order would be an *ultra vires* act." *See id.*

Instantly, the Board's order specified fees and inspection requirements that enjoined the Borough's ability to enforce the zoning ordinance as written. Accordingly, the trial court correctly determined that the order went beyond the

___

include suggested curative amendments. *See* 53 P.S. § 10916.1. In those cases, if the zoning board finds merit to the challenges, "the decision of the zoning hearing board shall include recommended amendments to the challenged ordinance which will cure the defects found." *See id.* In sum, the governing body has the power to act on a request for a curative amendment, while the zoning board may only issue an advisory opinion.

[13] The MPC defines "governing body" for a borough as "the council." *See* Section 107 of the MPC, 53 P.S. § 10107. Pitcairn is a Borough.

Board's statutory authority and was *ultra vires*. *In re Leopardi*, 532 A.2d at 314; *Greth Dev. Grp., Inc.*, 918 A.2d at 187.

### B. Hotel/Motel

MonJon asserts that the Property is a hotel/motel. *See* Appellant's Br. at 14. Therefore, according to MonJon, the zoning ordinance's requirements for occupancy permits are inapplicable, despite contrary findings by the Board. *See id.* MonJon states that it was willing to abide by the decision of the Board but "holds fast to its belief" that the enforcement of the zoning ordinance created a hardship that would justify a variance. *See id.*

In the alternative, MonJon suggests that its residents are not tenants because their residency is not governed by a lease agreement. *See id.* Therefore, because the residents are not tenants, MonJon cannot be a landlord. *See id.* MonJon posits that, instead, its property is a rooming house. *See id.* at 16 (citing in support the Allegheny County Department of Health website).[14]

The Borough responds that the Property is not a hotel or a motel as it features no functional aspects of either of those types of establishments. *See* Appellee's Br. at 2-3 (noting, *e.g.*, that there is no turn-down service, room service, wake-up calls, or any amenities commonly found in a hotel-motel). According to the Borough, a contrary finding would be absurd. *See id.* at 3.

---

[14] MonJon's attempt to distinguish a dwelling house (as found by the Board) from a rooming house is not particularly clear or persuasive because neither is defined by the zoning ordinance. Nevertheless, according to MonJon, the Allegheny Department of Health's definition of a rooming house is "a facility that houses four or more unrelated people in one or more rooms. The units inside a rooming house (either a room or group of rooms) have places for living and sleeping, but do not usually have areas for cooking or eating. Some of these facilities also require that individuals staying in different rooming units share a common bathroom. The most common example of a rooming house is a hotel or motel." *See* Appellant's Br. at 16. Although MonJon asserts that it introduced this definition at the hearing, the exhibit does not appear of record.

9

Upon review, the evidence does not support a finding that the Property is a hotel or motel. The Borough's zoning ordinance defines "hotel" as "a structure in which lodging or boarding and lodging are provided and offered to the public for compensation and in which ingress and egress to and from all rooms is made through an inside lobby or office supervised by a person in charge at all hours." Zoning Ordinance § 27-1301.

Monica Ustazewski, an owner of the Property, testified that the Property had been in use as a hotel and was not subject to the occupancy permit requirements prior to MonJon's purchase of the Property.[15] *See* N.T., 7/21/20, at 24-25. Currently, Ustazewski testified, the Property is used as a rooming house that receives referrals from different non-profits whose clients are in need of short-term accommodations. *See id.* at 32. Stays can be by the day, week, or month. *See id.* at 34, 42. The residents do not sign leases. *See id.* There are no wake-up calls, turn-down services, or other services generally provided by hotels. *See, generally*, N.T., 7/21/20, at 25-42. Finally, according to Ustazewski, while there is a manager available 24 hours a day, that person is not always at the front desk. *See id.* at 39-40.

As defined in the zoning ordinance and in accordance with Ustazewski's testimony, the Property is not a hotel. It does not offer lodging to the public; there is not a manager on duty in the inside lobby 24 hours a day; and the Property lacks the usual services that characterize a hotel or motel. Therefore, the

_____

[15] In MonJon's application to the Board for a zoning hearing, it asserted that the Property was used as a rooming/boarding house for approximately fourteen years. *See* MonJon, LLC Application for Zoning Hr'g, at 1. This document does not appear in the original record but is part of MonJon's Reproduced Record. *See* R.R. at 3. Neither party has disputed its accuracy or authenticity. As noted, *supra*, for these reasons, we may consider the document. *See* Pa.R.A.P. 1921; *see Brown*, 52 A.3d at 1145 n.4 (considering written plea colloquy in reproduced record where the accuracy of the reproduction had not been disputed).

10

Board did not abuse its discretion in concluding that Zoning Ordinance No. 27-1103 applies to MonJon because it is a dwelling house and not a hotel. *See Taliaferro*, 873 A.2d at 811 n.1.

### C. Undue Hardship

In its final claim, MonJon asserts that it was entitled to a use variance because it demonstrated an undue hardship unique to the Property. *See* Appellant's Br. at 17. According to MonJon, the Board properly found a hardship based upon unique characteristics of the Property, including its 22 individual units, which are often occupied on a short-term basis by clients referred to MonJon by various non-profit entities. *See id.*

In response, the Borough contends that any hardship was created by the Property owner itself, as MonJon has chosen to utilize the Property in this fashion instead of taking longer-term leases.[16] *See* Appellee's Br. at 3. The Borough argues that mere economic hardship cannot justify the grant of a variance. *See id.*

The party applying for a variance bears the burden of proof, and it is the function of the zoning board to determine whether the applicant has met the criteria for granting a variance. *Metal Green Inc. v. City of Phila.*, 266 A.3d 495, 506 (Pa. 2021). "A variance is a departure from the exact provisions of a zoning ordinance," and a use variance is permission to deviate from the zoning ordinance in regard to the use of the land. *S. Broad St. Neighborhood Ass'n v. Zoning Bd. of Adjustment*, 208 A.3d 539, 547 (Pa. Cmwlth. 2019); *see also Nowicki v. Zoning*

---

[16] Additionally, the Borough suggests that MonJon's reliance on *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998), is misplaced. *See* Appellee's Br. at 3. According to the Borough, *Hertzberg* concerned costs associated with the redevelopment and renovation of properties, whereas the Board here considered the proper application of an ordinance enacted for health and safety. *See id.* Although MonJon cited *Hertzberg* earlier in its brief, it does not rely on *Hertzberg* in its argument regarding unnecessary hardship. *See* Appellant's Br. at 13, 17.

*Hearing Bd. of Borough of Monaca*, 91 A.3d 287, 291 (Pa. Cmwlth. 2014). Generally, an applicant must prove that there is a unique hardship to the property; that there will be no adverse effect on the public health, safety, or general welfare; and that the requested variance is the minimum that will afford relief with the least modification possible.[17] *See Marshall v. City of Philadelphia*, 97 A.3d 323, 329 (Pa. 2014); *see also Metal Green Inc.*, 266 A.3d at 508.

We agree with the Borough that MonJon did not establish an undue hardship because the "hardship" was an economic hardship that resulted from MonJon's own business plan. *See Marshall*, 97 A.3d at 330 ("Mere economic hardship will not of itself justify a grant of a variance."); *see also Lawrenceville Stakeholders v. City of Pittsburgh Zoning Bd. of Adjustment*, 247 A.3d 465, 475 (Pa.

---

[17] The Borough of Pitcairn Ordinance provides that the Board may grant a variance where the following findings are made:

> A. That there are unique physical circumstances or conditions, irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this Chapter in the neighborhood or district in which the property is located.

> B. That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this Chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

> C. That such unnecessary hardship has not been created by the applicant.

> D. That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

> E. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Borough of Pitcairn Ordinance § 27-1004(1).

12

Cmwlth. 2021) ("Where variances are sought solely to enhance profitability, the asserted hardship arises not from the nature and circumstances of the property itself but is self-inflicted by way of the variance applicant's preferred or proposed use of the property.").

However, in our view, there was a more fundamental error in MonJon's appeal to the Board. In its appeal, MonJon asserted that the zoning ordinance was "applied arbitrarily, unreasonably, and discriminatorily, in violation of [MonJon's] Equal Protection Rights . . . ." Appeal of Not. of Zoning Violation, 2/6/20, at 2 (unpaginated).[18] Further, according to MonJon, the zoning ordinance was "unreasonable and not substantially related to a police power purpose . . . ." *Id.* at 3 (*See* R.R. 3). For these reasons, MonJon requested a determination that the Borough's enforcement conduct was improper and sought the withdrawal of all citations against it. *See id.* In the alternative, MonJon sought "a variance . . . under such terms as to allow the Applicant to conduct its business without the restrictive requirements currently requiring it to apply for occupancy permits each and every time a resident uses the property." *Id.*

Under the MPC, a substantive challenge to the zoning ordinance and a request for a use variance are mutually exclusive remedies. *See Cutler v. Newtown Twp. Zoning Hearing Bd.*, 367 A.2d 772, 776 (Pa. Cmwlth. 1976). "[T]he proper methods to challenge on substantive grounds the validity of an ordinance [in] which a party has an interest is to submit a validity challenge to the zoning hearing board or submit the challenge accompanied by a curative amendment to the governing

---

[18] This document does not appear in the original record but is part of MonJon's Reproduced Record. *See* R.R. at 1. Neither party has disputed its accuracy or authenticity. As noted, *supra*, for these reasons, we may consider the document. *See* Pa.R.A.P. 1921; *see Brown*, 52 A.3d at 1145 n.4 (considering written plea colloquy in reproduced record where the accuracy of the reproduction had not been disputed).

13

body." *See Vanguard Cellular Sys., Inc. v. Zoning Hearing Bd. of Smithfield Twp.*, 568 A.2d 703, 708 (Pa. Cmwlth. 1989). "A request for curative amendment or rezoning is fundamentally different from a variance" and a "zoning hearing board only has jurisdiction to determine a request for a variance, not a request for rezoning under the guise of a variance." *See id.* at 708-09.

Here, MonJon's requested alternative relief was effectively a request for a curative amendment, not a use variance. The Board should have denied this improper request as it lacks authority to award such relief. *See id.*

Further, there was no need for a use variance. The record establishes that either MonJon or its predecessor have operated a dwelling house or group home on the Property for well over a decade. *See* MonJon, LLC Appl. for Zoning Hr'g, at 1; *see also* N.T., 7/21/20, at 24-25. The Borough was not attempting to shut down MonJon's operation; it merely sought to enforce its inspection and occupancy fee requirements. Indeed, the Property is located in a commercial district, which permits group homes as a conditional use. *See* Not. of Zoning Appeal, 1/21/21; *see also* Zoning Ordinance § 27-501.

### IV. CONCLUSION

On this record, we discern no error or abuse of discretion in the Board's conclusion that MonJon does not operate a hotel or motel. *See Taliaferro*, 873 A.2d at 811 n.1. Nevertheless, in granting MonJon relief, the Board exceeded its authority. It is not permitted to craft curative amendments under the guise of a use variance. *See Vanguard*, 568 A.2d at 708. Moreover, in light of the longstanding operation of a dwelling house or group home on the Property, a use permitted by the

zoning ordinance, we discern no need for a use variance. For these reasons, we affirm the trial court's order reversing the order of the Board as *ultra vires*.[19]

_____
LORI A. DUMAS, Judge

_____

[19] As presented, the Board was permitted only to recommend amendments to the challenged ordinance. *See* 53 P.S. § 10916.1(a). If MonJon wishes to challenge the validity of the imposition of fees and inspections and receive a curative amendment, it must submit its validity challenge to the Borough of Pitcairn Council in accordance with Section 609.1 of the MPC, 53 P.S. § 10609.1(a).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Borough of Pitcairn          :
                                 :
         v.                      :    No. 1253 C.D. 2021
                                 :
The Zoning Hearing Board of      :
the Borough of Pitcairn and      :
MonJon, LLC                      :
                                 :
Appeal of: MonJon, LLC           :

## **O R D E R**

AND NOW, this 22nd day of January, 2024, the order of the Court of Common Pleas of Allegheny County, entered October 7, 2021, is AFFIRMED.

_____
LORI A. DUMAS, Judge