IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jennifer Lopez,                               :
        Appellant                           :
                                            :
    v.                                      :    No. 1250 C.D. 2024
                                            :    Argued: September 9, 2025
Zoning Hearing Board of the                   :
Borough of Mount Penn and                     :
Antietam School District                      :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT        FILED:  November 20, 2025

        Jennifer Lopez (Objector) appeals an order of the Court of Common Pleas of Berks County (trial court) granting Antietam School District (School District) a special exception to revise the assignment of class grades to its elementary school building.  On appeal, Objector argues that the trial court erred because the School District's evidence did not demonstrate compliance with the objective criteria for a special exception.  Alternatively, Objector argues that her testimony on traffic, parking, trespassing, and littering demonstrated a high probability of harm to the public interest that required the special exception to be denied.  For the following reasons, we affirm.

## Background

        The School District serves residents of Mount Penn Borough (Mount Penn) and Lower Alsace Township (Lower Alsace) in Berks County, Pennsylvania.  It owns three school buildings: a junior/senior high school in the City of Reading;

an elementary school in Mount Penn; and a primary school in Mount Penn. In July of 2023, the junior/senior high school was damaged in a flood of the Antietam Creek and could not open for the 2023-2024 school year, requiring the transfer of students to different locations. With temporary approval of the Mount Penn Zoning Hearing Board (Zoning Board) for the 2023-2024 school year, the third-grade students were moved from the elementary school to the primary school.[1] The elementary school continued to serve grades 4 and 5, and it began to serve grades 7 through 12 on a part-time basis. The older students also attended courses at Trinity UCC Church. Students in grade 6 were assigned to an off campus building at Albright College.

In December 2023, the School District applied for a special exception, pursuant to the Joint Zoning Ordinance for Lower Alsace Township and Mount Penn Borough,[2] to use its elementary school (Subject Property) for grades 3 through 8, beginning with the 2024-2025 school year. Approximately 1.22 acres and rectangular in shape, the Subject Property is bordered on three sides by streets and on the fourth side by a park.

---

[1] The Zoning Board granted the School District a special application to allow students in grades 3 through 6 and 7 through 12 to attend classes at the elementary school for the 2023-2024 school year, stating that this granting of a "special exception will expire at the conclusion of the 2023-2024 school year." Zoning Board Decision, Conclusion of Law ¶5; Reproduced Record at 21a (R.R. __). The Zoning Board also granted the School District a variance for the "2023-2024 school year only" from the off-street parking requirements in the Zoning Ordinance. Zoning Board Decision, Conclusion of Law ¶6; R.R. 21a. The Zoning Board stated that beginning with the 2024-2025 school year, the School District "shall comply with all parking requirements of the [Zoning] Ordinance." *Id*.

[2] JOINT ZONING ORDINANCE FOR LOWER ALSACE TOWNSHIP AND MOUNT PENN BOROUGH OF 2011. Available at: https://img1.wsimg.com/blobby/go/221ac26c-a63f-4e2d-a3a0-ff77c257ad19/Joint%20Zoning%20Ordinance-7b7905d.pdf (last visited (November 19, 2025), 2025) (ZONING ORDINANCE).

The Zoning Board held a hearing on the School District's application, at which Objector was granted party status. The Zoning Board granted a special exception to use the Subject Property for grades 3 through 8.

Objector appealed the Zoning Board's decision. She also filed a motion to take additional evidence, explaining that events had occurred after the Zoning Board's decision, including the School District's announcement that it would use modular classrooms for grades kindergarten through grade 3 instead of leasing or purchasing a new building; a pedestrian motor vehicle accident occurred in close proximity to the primary school; and a floor collapsed during renovations to the interior of the primary school. The trial court granted Objector's motion.

**Trial Court Proceedings**

The trial court held a *de novo* evidentiary hearing on both Objector's land use appeal and that of another objector in *George Saltzman v. Zoning Hearing Board of Mount Penn Borough and the Antietam School District* (CCP Docket No. 24-4536). To support its application, the School District presented the testimony of its superintendent, Dr. Timothy Matlack, and the School District's architect, Philip Leinbach.

Dr. Matlack testified that in July of 2023, the Antietam Creek flood rendered the junior/senior high school building unusable and required an immediate revision to classroom assignments. Accordingly, grades 4 and 5 and, part-time, grades 7 to 12, were assigned to the Subject Property for the 2023-2024 school year. For the 2024-2025 school year, the School District requested approval to use the Subject Property for grades 3 through 8. However, the School District planned to use the Subject Property only for grades 4 through 8; it included the third grade in the request "to be safe." Notes of Testimony, 8/12/2024, at 25 (N.T. __); R.R. 69a.

3

Dr. Matlack testified that in the 2024-2025 academic year, the Subject Property would house 455 students; 43 full-time employees; and 10 part-time employees. It needs 103 parking spaces. The School District has secured 124 total parking spaces for the Subject Property. This includes 26 off-street parking spaces and 46 on-street spaces; 15 parking spaces at St. Catherine of Siena's Chapel, adjacent to the school building; and 37 parking spaces at a nearby parking lot.

Philip Leinbach, President and Architect at AEM Architects, testified about his firm's parking analysis for the School District. He testified that the Zoning Ordinance required 1 space for each employee, 1 space for every 10 students in grades kindergarten through 9, and 1 space for every student in grades 10 through 12. N.T. 141-42; R.R. 185a-86a (citing ZONING ORDINANCE, §804). Off-street parking must be available within 400 feet of the school building, and on-street parking must be available within 500 feet. Leinbach testified that because there was sufficient parking at the Subject Property for the 2024-2025 school year, a variance was not needed.[3] Leinbach stated that the School District's proposed grade assignments for the Subject Property would not change the character of the neighborhood because it has been used since the 1950s as an elementary school.

Objector, who lives across the street from the Subject Property, testified that parking is "tight during school hours." N.T. 283; R.R. 327a. Further, when the School District moved grades 4 through 12 into the Subject Property, parking became a daily problem for residents. Because students came and went during the day, there was an increase in double parking and traffic congestion. Objector testified that on one occasion, an employee of the School District hit her car and left

---

[3] In contrast, a variance was needed for the 2023-2024 school year and was granted for a single year. Zoning Board Decision, Conclusion of Law ¶6; R.R. 21a.

the scene. On another occasion, a student was hit by a car. Objector contended that the grant of a special exception would undermine safety and increase traffic.[4]

## Trial Court Decision

The trial court made 29 findings of fact. Relevant to this land use appeal, the trial court made the following findings of fact:

> 18. The School District has been using the Subject Property as a school for educational purposes for an extended period of time.
>
> 19. The School District currently projects that there will be approximately 455 students attending school at the Subject Property.
>
> 20. The School District currently projects that there will be forty-three (43) full-time staff members, ten (10) specialists who work four (4) at a time, and ten (10) part-time staff members working in the school building at the Subject Property.
>
> 21. The principal use of the Subject Property will be that of a school or educational use.
>
> . . . .
>
> 25. The proposed School and Educational Use at the Subject Property is located on land that has a minimal lot area of one (1) acre.
>
> 26. The proposed use has been served in the past and continues to be served by adequate sanitary sewer facilities that are subject to review and approval by all agencies with jurisdiction.
>
> 27. The proposed use has been served in the past and continues to be served by adequate water supply facilities that are subject to review and approval by all agencies with jurisdiction.
>
> 28. The proposed use has been served in the past and continues to be served by adequate utilities that are subject to review and approval by all agencies with jurisdiction.

---

[4] George Saltzman testified in support of his land use appeal, which concerned not the Subject Property but the School District's plan to use the primary school as a high school.

29. All means of ingress and egress at the Subject Property are located, designed and constructed in order to provide a safe and efficient mode of transportation.

Trial Court Decision at 5-6. Based on these findings, the trial court granted the School District's request for a special exception.

In its opinion, the trial court noted that Objector conceded that the Subject Property could be used for a school and educational use. As defined in the Zoning Ordinance, "school" and "educational uses" are "broad and include all grade levels." Trial Court Op. at 12. Therefore, the proposed grade levels assigned to the Subject Property, beginning with the 2024-2025 school year, did not "impact the proposed use." *Id*.

## Appeal

In her appeal of the special exception,[5] Objector raises two issues:

1.      Whether the trial court committed an abuse of discretion and/or error of law by granting the District's request for a special exception despite the District's failure to meet all of the objective criteria for a special exception found in the Zoning Ordinance?

2.      Whether the trial court committed an abuse of discretion and/or error of law by granting the District's request for a special exception and therefore finding that the safety and welfare issues presented by [Objector] did not create a high probability that the proposed use will substantially and negatively affect the health, safety, and welfare of the community?

Objector Brief at 4.

---

[5] "Where the trial court [takes] any additional evidence on the merits, [] it must determine the case *de novo*, making its own findings of fact based on the record made before the board as supplemented by the additional evidence; this Court must then determine on appeal whether the trial court, not the board, committed an error of law or an abuse of discretion." *Mitchell v. Zoning Hearing Board of the Borough of Mount Penn*, 838 A.2d 819, 825 (Pa. Cmwlth. 2003).

**Analysis**

We begin with a review of the applicable legal principles. "A special exception is not an exception to the zoning ordinance, but rather a use to which the applicant is entitled provided the specific standards enumerated in the ordinance . . . are met[.]" *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006). The applicant for a special exception has the burden of proving that the proposed special exception use satisfies the standards in the zoning ordinance. *Greth Development Group, Inc. v. Zoning Hearing Board of Lower Heidelberg Township*, 918 A.2d 181, 186 (Pa. Cmwlth. 2007). Once an applicant has made out a *prima facie* case, the burden shifts to any objectors to present sufficient evidence that the proposed use has a detrimental effect on the public health, safety, and welfare. *Id*.

The R-5 Zoning District, where the Subject Property is located, permits a school use by special exception. It states, in relevant part, as follows:

> Uses by Special Exception: The following principal and accessory uses are permitted by special exception within the R-5 Zoning District, provided that such use complies with the provisions of this Joint Zoning Ordinance:
>
> . . . .
>
> > (7) *Schools and Educational Uses, subject to Section 650*[6] *of this Joint Zoning Ordinance*.

ZONING ORDINANCE, §407(D)(7); R.R. 357a-58a (emphasis added). An "educational use" is defined as follows:

> A use having one or more of the following purposes: to educate or instruct individuals in a school setting with instruction directed towards academic, moral, intellectual, physical and vocation instruction. Excepted from this definition are uses devoted to

---

[6] This section relates to retail convenience stores permitted by special exception within the C-1 and C-2 zoning districts. ZONING ORDINANCE, §650. The requirements for schools and educational uses are set forth in Section 651 of the Zoning Ordinance.

7

driver training schools, heavy equipment training schools, riding schools, private recreational uses, day-care centers, and other uses that are not considered academic in character.

ZONING ORDINANCE, §202; R.R. 350a. The term "school" is defined as follows:

A building or group of building[s] intended to provide or facilitate an educational use including pre-schools, nursery schools, kindergartens, elementary schools, secondary schools, technical schools, trade schools, vocational schools, business schools, colleges and/or universities, which are licensed and accredited as an education facility.

*Id.*; R.R. 351a.

The requirements for school and educational uses are set forth in Section 651 of the Zoning Ordinance, which provides, in pertinent part, as follows:

(B) The following principal and accessory uses shall be permitted as part of a school or educational use:

. . . .

(2) Accessory or subordinate uses for the school or educational use shall be limited to: administrative offices; cafeterias; concession recreational uses; entertainment uses, child care facilities; religious uses; and other similar uses that are determined appropriate by the municipality with jurisdiction. The cumulative gross floor area for all such accessory uses shall not occupy more than forty (40) percent of the cumulative gross floor area of all uses within the building occupied by the school or educational facility.

. . . .

(D) The following standards and specifications shall be required for schools and educational uses:

. . . .

(5) All property lines adjacent to existing residential land uses shall be adequately screened and buffered so as to protect the residential neighborhood from inappropriate noise, light and other disturbances.

8

. . . .

(7) The off-street parking, loading spaces and interior access lanes shall be designed to comply with the provisions specified under Article 8 of this Joint Zoning Ordinance.

. . . .

(9) The applicant shall develop, implement and maintain a working plan for the solid waste disposal, recycling and the clean-up of litter that could be a result of the proposed use.

(E) As part of the special exception application, the applicant shall provide evidence that the educational use or activities shall comply with the provisions established by the municipality with jurisdiction. This may include the submission of a grading plan, utility plan, landscaping plan, architectural renderings, traffic impact study and/or environmental impact assessment report. Prior to the submission of the special exception application, the applicant shall consult with the municipality with jurisdiction to initially discuss the supplemental documentation that may be required.

. . . .

ZONING ORDINANCE, §§651(B)(2), (D)(5), (D)(7), (D)(9), (E); R.R. 362a-64a.

The Zoning Ordinance's parking provision provides, in pertinent part, as follows:

(A)    *Off-street parking facilities shall be provided whenever*: a building is constructed or new use established; *the use of an existing building is changed to a use requiring more parking facilities; an existing building is altered so as to increase the amount of parking spaces required*; and/or a residential or non-residential use requires off-street parking as specified by the provisions of this Joint Zoning Ordinance.

(B)    Unless otherwise specified by this Joint Zoning Ordinance, each off-street parking space shall have a minimum area of two hundred (200) square feet with the minimum dimensions of ten (10) by twenty (20) feet. In addition,

9

driveways, aisles and maneuvering spaces shall be provided to permit safe and convenient access to and use of the area provided for parking purposes. Proper access from a street, alley or driveway shall be provided.

(C)    Off-street parking spaces for residential uses shall be located on the same lot as the use served. Off-street parking spaces for other uses shall be provided for on the same lot as the use being served, or in parking facilities within four hundred (400) feet of the principal uses, except in the case of a shopping center or similar grouping of buildings on a lot, in which case all parking areas shall be provided entirely within the lot lines of the property.

. . . .

(E)    Joint parking facilities for two (2) or more uses may be established, provided that the number of spaces provided is not less than the sum of the spaces required for each individual use.

. . . .

(F)    All parking spaces and means of access, other than those relating to a dwelling, shall be adequately illuminated during night hours of use.  []

ZONING ORDINANCE, §804(A)-(C), (E)-(F); R.R. 367a-68a (emphasis added).  The minimum number of off-street parking spaces required for a school or educational use follows:

Nursery School through the 9th Grade: 1 parking space per 10 students plus 1 space per employee plus auditorium requirements.

10th through 12th Grade: 1 parking space per 4 students plus 1 space per employee plus auditorium requirements.

ZONING ORDINANCE, §804(R); R.R. 371a.

For uses that pre-date the adoption of the 2011 Zoning Ordinance, the Zoning Ordinance states as follows:

Where an existing building or use pre-exists the effective date of this Joint Zoning Ordinance, *the provisions for off-street loading and off-street parking,* as specified within this Article *shall not*

10

*specifically apply*, *unless the building or use is enlarged* or altered in a manner that increases the demand for off-street loading or off-street parking.

ZONING ORDINANCE, §802(E); R.R. 365a (emphasis added). Where a pre-existing use or building is enlarged, the Zoning Ordinance states:

*Where an existing building or use is enlarged by* floor area, *number of employees*, number of residential units, seating capacity, bed spaces, service bays, or other provisions specified by this Joint Zoning Ordinance, *the required number of* off-street loading spaces and/or *off-street parking spaces shall be proportionately or incrementally increased* based upon the enlargement of the building or use.

ZONING ORDINANCE, §802(F); R.R. 365a (emphasis added).

## I. Objective Criteria for Special Exception

In her first issue, Objector argues that the School District did not establish that the proposed use for the Subject Property meets "the specific objective criteria" of the Zoning Ordinance for a special exception. Objector Brief at 11 (quoting *Heisler's Egg Farm, Inc. v. Walker Township Zoning Hearing Board*, 232 A.3d 1024, 1035 (Pa. Cmwlth. 2020)). Specifically, Objector contends, in sum, as follows:

- Section 651(B)(2) requires a 40% limitation on the gross floor area of accessory or subordinate uses for the proposed use, which are limited to: administrative offices, cafeterias, and other similar uses deemed appropriate. The School District did not present any calculations on the total gross floor area of the elementary center or the gross floor area of accessory or subordinate uses.

- Section 651(D)(5) requires that all property lines adjacent to existing residential land uses be adequately screened and buffered to protect the residential neighborhood from inappropriate noise, light and other disturbances. The School District did not address this requirement or request additional relief from this requirement.

11

- Section 651(D)(9) requires that the Township develop, implement and maintain a working plan for solid waste disposal, recycling and the clean-up of litter. The School District did not address this requirement.

- Section 651(E) requires that, prior to the submission of an application for special exception, that the applicant consult with the Borough about supplemental documentation needed to show that the school use complies with the Borough's provisions related to grading, utility, landscaping, architectural, traffic and/or environmental plans and reports. The School District did not address this requirement.

- Section 651(D)(7) requires that off-street parking, loading spaces and interior access lanes comply with Article 8 of the Zoning Ordinance. The School District did not establish that the allocated parking spaces satisfy minimum dimensions, parking overlap, written lease agreement requirements, adequate illumination, paving and markings, 15-foot setbacks from property lines and street right-of-way.

Objector Brief at 11-14.

The School District responds that the Subject Property has "been functioning as a school and educational use for an extended period of time," which constitutes "circumstantial evidence of compliance" with the objective criteria for a special exception. School District Brief at 15 (quoting Trial Court Pa.R.A.P. 1925(a) Op. at 15). Further, there is no requirement in the Zoning Ordinance that the School District "re-qualify" for a special exception simply to change the grade assignments. Finally, the addition of one grade to the Subject Property did not change the footprint or height of the existing building.

The Zoning Ordinance permits schools and educational uses in an R-5 Zoning District by special exception. ZONING ORDINANCE, §407(D)(7); R.R. 358a. An educational use has "one or more of the following purposes: to educate or instruct individuals in a school setting with instruction directed towards academic, moral,

intellectual, physical and vocation instruction." ZONING ORDINANCE, §202; R.R. 350a. A school includes "[a] building" which "provide[s] or facilitate[s] an educational use including . . . elementary schools[.]" *Id*.

The Addendum to the special exception application addressed compliance with the objective criteria for a special exception. It stated as follows:

> 1.     The principal use on the property is school and educational use, and the school building is the principal building on the property. (Section 651.B(1)).
>
> 2.     The administrative office area and cafeteria area, which are pre-existing conditions of the property, do not occupy more than 40% of the gross floor area within the building. (Section 651.B(2)).
>
> . . . .
>
> 8.     There are no property lines adjacent to residential uses which would require buffering or screening to protect adjacent neighborhood residents from inappropriate light, noise, or other disturbances. The property is bordered by three streets (Cumberland Avenue, Beech Street, and Grant Street), and the sole boundary is with a property used as a park.[7] []
>
> 9.     The landscaping and lighting pre-exist the adoption of the Joint Zoning Ordinance, and there will be no changes required from the K-12 school use. Applicant will comply with the requirements for solid waste disposal, outdoor storage, and noise as required by Article 7 of the Joint Zoning Ordinance. (Section 651.D(6)).
>
> . . . .
>
> 11.     Applicant has in place working procedures for solid waste disposal, recycling, and cleanup of litter, and will modify those procedures as required by the Borough and/or Central Berks Regional Police. (Section 651.D(9)).

---

[7] *See* R.R. 466a (image of Elementary Center).

12. Applicant is providing with this Application exhibits and supporting information on parking, traffic patterns, and enrollment. (Section 651.E).

Addendum to Application at 1-2; R.R. 378a-79a.

As to any changes in traffic due to the grade assignment changes at the Subject Property, the School District's traffic study concluded that "[t]here was not an expectation that the deployment of grade levels explained would have any kind of noticeable effect on the traffic in the area." N.T. 47; R.R. 91a. As to parking, Dr. Matlack testified that the School District assigns parking tags and spaces to faculty and staff, which they are required to use. It also assigns parking spaces for visitors and licensed student drivers who wish to drive to school. N.T. 41; R.R. 85a. The School District's architect testified that the number of parking spaces satisfies the Zoning Ordinance.

In short, the School District's application established that it met the requirements for a special exception in the Zoning Ordinance. It established that administrative office and cafeteria areas do not occupy more than 40% of the gross floor area within the building; the Subject Property has an existing solid waste, recycling and litter clean-up plan; and because the property is bordered by three streets and a public park, the Zoning Ordinance's screening requirements are not applicable. Finally, the School District's evidence demonstrated compliance with Article 8 of the Zoning Ordinance, which governs parking. Objector did not present any contrary evidence on the objective criteria for a special exception.

A "school" is defined as "[a] building or group of building[s] intended to provide or facilitate an educational use . . . ." ZONING ORDINANCE, §202; R.R. 350a. Stated otherwise, a school is broadly defined without reference to the age or

14

grade level of the students. Thus, a change in grades assigned to the Subject Property did not trigger the need for a special exception.[8]

We reject Objector's argument that the School District did not satisfy the objective criteria in the Zoning Ordinance for a special exception. In any case, as a matter of law, the School District did not need a special exception to continue its use of the Subject Property as a school for educational use. It has done so since the 1950s, before the enactment of the Zoning Ordinance.

## II. Impact on Public Health, Safety and Welfare

In her second issue, Objector argues that traffic, parking, trespassing and littering create a high probability that the proposed use will substantially and negatively affect the community. Objector points out that Saltzman has experienced problems related to increased traffic, parking, trespassing and littering when the School District changed the grade levels at the primary school building. Objector contends that "the likelihood of the past and present problems" will intensify by adding a grade to the Subject Property that will have "a detrimental effect on health, safety, and welfare." Objector Brief at 18.

The School District responds that Objector's concerns are speculative at best. Objector's complaint concerned the 2023-2024 school year, during which students of driving age were assigned to the Subject Property. Beginning with the 2024-2025 school year, the Subject Property will not serve any students of driving age.

It is well established that "not every anticipated increase in traffic will justify the refusal (to grant) a special exception." *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 914 (Pa. Cmwlth. 1980) (quotation omitted). An objector

_____

[8] At oral argument, the School District's counsel explained that it applied for the special exception to use the Subject Property for third through eighth grades at the direction of Mount Penn.

15

must show "'a high degree of probability' that the traffic increase would pose a substantial threat to the health and safety of the community." *Id.* (quoting *Appeal of O'Hara*, 131 A.2d 587, 596 (Pa. 1957)). "Mere speculation as to possible harm is insufficient." *H.E. Rohrer, Inc. v. Zoning Hearing Board of Jackson Township*, 808 A.2d 1014, 1018 (Pa. Cmwlth. 2002).

Objector did not present competent, objective evidence sufficient to carry her heavy burden of demonstrating the proposed use will adversely affect the health, safety, and welfare of the community. A mere increase in traffic is not "grounds for denial of a special exception unless there is a high probability that the proposed use will generate traffic not normally generated by that type of use and that the abnormal traffic threatens safety." *Accelerated Enterprises, Inc. v. The Hazle Township Zoning Hearing Board*, 773 A.2d 824, 827 (Pa. Cmwlth. 2001). Objector's evidence consisted of her opinion and the opinion of another objector that traffic and safety issues would result from a change in the grade assignments at two schools. This falls short of a "high degree of probability" that the addition of one class grade "will generate adverse impacts *not normally generated by this type of use* and that these impacts will pose a substantial threat to the health and safety of the community." *Quaker Valley School District v. Leet Township Zoning Hearing Board*, 309 A.3d 279, 289 (Pa. Cmwlth. 2024) (quoting *Siya Real Estate LLC v. Allentown City Zoning Hearing Board*, 210 A.3d 1152, 1157 (Pa. Cmwlth. 2019)) (emphasis in original). To the extent that there are any parking violations, it is incumbent upon the Borough's zoning officer or the police department to enforce Mount Penn's Zoning Ordinance.

We reject Objector's second issue on appeal. The fact that traffic may increase is not grounds for denying the School District's application for a special

exception. Objector failed to establish that the new grades assigned to the Subject Property will generate adverse impacts not normally associated with a school use.

## Conclusion

We conclude, and hold, that the School District was not required to seek a special exception to assign grades 3 through 8 to the Subject Property, beginning in the 2024-2025 school year. Even so, the School District satisfied the requirements in the Zoning Ordinance for a special exception. Accordingly, we affirm the trial court.

_____
MARY HANNAH LEAVITT, President Judge Emerita

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jennifer Lopez,                   :
         Appellant             :
                                  :
       v.                    :         No. 1250 C.D. 2024
                                  :
Zoning Hearing Board of the    :
Borough of Mount Penn and     :
Antietam School District         :

# **O R D E R**

AND NOW, this 20th day of November, 2025, the order of the Court of Common Pleas of Berks County, dated August 14, 2024, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita